[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
FINDINGS, CONCLUSIONS AND ORDERS
The Department of Children and Families moved that this Court maintain the current commitment, review and approve a permanency plan for K.R. which calls for the termination of the parental rights of the mother and the father and adoption of the child by the current foster family. DCF also seeks a finding of the Court that efforts are no longer appropriate to reunite the child with her parents or either of them.
The putative father, Jim M. failed to appear at the hearing on the State's motion and has a consistent history of disinterest in the child. The mother, Josseline R., appeared and filed a written objection to the plan. At the hearing held on May 13, 2002, the Court heard testimony from Carol Kniss, a social worker employed by DCF, and Josephine G. the adult with whom the mother currently resides. Both the specific steps approved and ordered by the Court and the Study dated 1/28/02 and prepared by Ms Kniss were admitted as exhibits. Based on that record, the Court makes the following findings of relevant facts:
 1. Mother is a minor and was committed to the care and custody of DCF on August 10, 1995.
 2. Ms Kniss is the social worker assigned to monitor and serve the needs of the mother.
3. K.R. was born to the mother on
 4. On 2/13/01 mother requested a voluntary placement of the child with DCF to enable her to address her substance abuse problem through treatment.
 5. DCF took custody of the child on 2/16/01, and since then the child has been placed in a DCF foster home. The child has thrived and bonded with her foster family. The foster family has expressed an interest in adopting the child.
 6. The putative father has not initiated any visits CT Page 6470 or contact with DCF or been involved in any way with the child since 2/16/01.
 7. Ms Kniss is also the social worker assigned to monitor and serve the needs of the child.
 8. Over the 15 months from the date of DCF custody to the date of the hearing, the mother failed to advise DCF of her whereabouts for approximately 130 days equally divided among three distinct periods.
 9. Between 2/16/01 and 1/28/02 mother consistently refused services offered by DCF and acted in defiance of instructions and recommendations of DCF even though DCF was and continues to be her designated guardian.
 10. Between 2/16/01 and 1/28/02 mother avoided drug testing and failed to cooperate with DCF recommended drug treatment. During the period mother tested positive for prohibited drugs once and negative for drug use twice. The negative tests were the most recent ones.
 11. Between 2/16/01 and 1/28/02, mother cooperated with regular visitation as allowed by DCF; however, mother was less faithful to the schedule during periods when she avoided disclosing either the location of or the condition of her personal living arrangements.
 12. On or about 1/28/02 mother began living with Josephine Ginin New Britain. Ms. G is a recovering addict who has been clean for ten years and who maintains a four-bedroom apartment which houses her own family.
 13. Since living with Ms. G, mother has remained clean and has sought support for her parenting obligations, her mental health needs, her educational deficits and her housing needs. Other than mother's attendance twice a week at a teen parenting group, none of the requested interventions have actually started. CT Page 6471
 14. On mother gave birth to her second child. The baby continues to reside with her.
 15. The institutional and spiritual support for Ms Gonzalez and mother is the Salvation Army.
 16. DCF has not prepared an update of its Study in Support of Permanency Plan and to Maintain Commitment to reflect the events of the last four months.
Based on these facts, the Court has reached the following conclusions:
 1. Mother has been non-compliant with the Specific Steps ordered by the Court.
 2. The foster parents are caring for the child in a save and supportive environment.
 3. Mother has not yet developed the skills to or established an independent, safe and secure environment in which she could care for two children.
 4. Mother made substantial changes in her conduct and life style within a year of the Order of Temporary Custody and has sustained those changes for four months.
 5. As of 1/28/02, clear and convincing evidence established that the best interest of the child would be served by adoption by the foster parents.
 6. Mother has earned the right to a second look based on the work that she has done since 1/28/02.
Now, therefore, the Court enters the following orders:
 1. The order of commitment of the child to the care and custody of the Department of Children and Families is continued until further order of the Court. The filing date for a subsequent report will be November 19, 2002.
 2. The request for review and approval of the CT Page 6472 permanency plan calling for termination of parental rights and adoption by the foster parents is denied without prejudice to renew the motion on the subsequent filing date or at any time prior to that date if DCF concludes that mother has not followed through with her current efforts sustain a positive life style and create a safe and supportive environment for her two children.
 3. The request that the Court find that efforts to reunify the child with the mother are no longer appropriate is denied.
 4. The request that the Court find that efforts to reunify the child with the father are no longer appropriate is granted.
 5. The court finds that DCF has made reasonable efforts the reunite the child with her parents and Reasonable efforts to achieve permanency.
By the Court Thayer Baldwin, Jr. Judge of the Superior Court